IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMONDNET, INC., and INTENT IQ, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EPSILON DATA MANAGEMENT, LLC, CONVERSANT LLC, and CITRUS AD INTERNATIONAL, INC., <br><br> Defendants. | Case No. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. ("AlmondNet") and Intent IQ, LLC ("Intent IQ") (collectively, "Plaintiffs") make the following allegations against Defendants Epsilon Data Management, LLC ("Epsilon"), Conversant LLC ("Conversant"), and Citrus Ad International, Inc. ("CitrusAd") (collectively, "Defendants"):

**INTRODUCTION AND PARTIES**

1.  This complaint arises from Defendants' unlawful infringement of the following United States patents, which generally relate to novel internet / network-based advertising systems and methods: United States Patent Nos. 8,959,146 (the "'146 patent"), 8,677,398 (the "'398 patent"), and 10,321,198 (the "'198 patent") (collectively, the "Asserted Patents"). AlmondNet owns the '146 patent and holds all enforcement rights. Intent IQ owns the '398 patent and '198 patent and holds all enforcement rights.

1

2. AlmondNet, Inc. is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC, are collectively referred herein as the "Plaintiffs."

3. Founded in 1998, AlmondNet has developed an extensive suite of industry-leading targeted advertising solutions and products, is focused on R&D and the licensing of its extensive portfolio of enabling technology and intellectual property covering numerous areas of the targeting landscape and ecosystem, including profile-based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

4. Intent IQ is a leading company in the field of cross-device-based ad targeting, retargeting, audience extension, and attribution. Intent IQ's "Dynamic Device Map" identifies a given user across multiple device types, including laptops, desktops, smartphones, tablets, and televisions, so as to assist advertisers in delivering targeted ads to consumers on all of their screens. Intent IQ can facilitate ad targeting based on profile data aggregated from activity on any of a user's screens, as well as measure the impact of previously delivered ads on the same or different screen.

5. On information and belief, Epsilon Data Management, LLC is a Delaware corporation with a principal place of business at 6021 Connection Drive, Irving, Texas 75039. Epsilon may be served with process through its registered agent, the Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

6. On information and belief, Citrus Ad International, Inc. is a Delaware corporation with a corporate address at 136 4th Street North STE 326, St. Petersburg, Florida 33701. CitrusAd

may be served with process through its registered agent, the Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

7. On information and belief, Conversant LLC is a Delaware corporation with a corporate address at 35 West Wacker Dr. Chicago, Illinois 60601. Conversant LLC may be served with process through its registered agent, the Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

8. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Defendants in this action because Defendants are incorporated under the laws of the state of Delaware, have committed acts within this District giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, using, offering to sell, and selling products and services that infringe the Asserted Patents.

10. Venue is proper in this District because Defendants are incorporated under the laws of the State of Delaware.

## ACCUSED INSTRUMENTALITIES

11. As used herein, "Accused Instrumentalities" includes without limitation the Epsilon[1] PeopleCloud platform, CitrusAd off-site, and related components, including but not limited to components such as Epsilon's DSP, Epsilon Digital, Epsilon's Dynamic Creative Optimization, Epsilon Accelerate, CORE ID, CORE Private Exchange, header bidding, and Epsilon CTV.

12. Defendants' Privacy Policy explains that "Epsilon Data Management, LLC d/b/a Epsilon and Yieldify, along with our affiliates, Conversant LLC d/b/a Epsilon, and Citrus Ad International, Inc. ('we', 'our,' 'us', 'Epsilon'), provide a variety of marketing data, consumer analytics, and marketing technologies services ("Services")." https://legal.epsilon.com/us/NA-products-privacy-policy. Accordingly, Defendants hold out both of Epsilon and Conversant as doing business as "Epsilon," and Defendants also refer to CitrusAd as "Epsilon" for purposes of the marketing data, consumer analytics, and marketing technologies services provided by the three entities.

13. Defendants' Privacy Policy further explains that "[t]o provide our Services, we must collect, use and disclose some information about [individuals whose personal data may be used in its Services]," including "[i]nferences" and "[i]nternet or other electronic network activity information." *Id.*

14. Defendants' Privacy Policy further explains that Defendants collect and use this information to "help companies serve personalized advertising across the Internet," and notes that the "practice of customizing and providing online ads is often called interest-based advertising

---

[1] References to Epsilon in marketing materials plausibly refer to both Epsilon and Conversant, because as noted in the following paragraph, both companies hold themselves out as doing business as "Epsilon."

("IBA"), targeted advertising, or cross-context behavioral advertising." *Id.* One example of IBA activities provided in the Privacy Policy include "helping clients identify and target ads to online audiences based on common demographics and/or disclosed (actual or inferred) interests or preferences (e.g., consumers interests in winter apparel)," which involves the use of "cookies and identifiers to target and measure ad campaigns online across various display, mobile and other media channels." *Id.* Another example of IBA activities provided in the Privacy Policy includes "[a]ssisting clients by creating 'identity' graphs, to help locate users across various channels, such as connecting identities based on common personal, device-based, or network-based identifiers (e.g., cookies ID, IP address, or hashed email address)." *Id*.

15. On information and belief, Epsilon and Conversant offer "one connected platform." *See* https://www.epsilon.com/us/products-and-services/epsilon-peoplecloud. Epsilon's website touts its platform as having been "designed to bridge adtech and martech, so marketers can create 1 View, 1 Vision and 1 Voice to engage each individual consumer across paid, owned and earned channels" by "us[ing] industry-leading identity resolution and AI to power every interaction across each customer's entire journey." *Id.* Epsilon's website continues: "[w]ith both united into one platform, Epsilon PeopleCloud creates greater efficiency, clarity and control to every stage in the consumer lifecycle and drives exceptional outcomes for brands." *Id.*

16. The CitrusAd Privacy Policy includes the following reference to the Epsilon Privacy Policy: "**Information about Epsilon's CitrusAd services.** For information about CitrusAd's privacy practices related to the processing of consumer personal data through services it provides to retailer and advertiser clients, please see the Epsilon global privacy policies (https://legal.epsilon.com/global-privacy-policies/)." https://citrusad.com/privacy-policy

17. "CitrusAd, powered by Epsilon" reportedly "unites CitrusAd's on-site and Epsilon's off-site capabilities in a single user interface." *See* https://www.publicisgroupe.com/en/news/press-releases/publicis-groupe-launches-the-industry-s-first-unified-on-site-and-off-site-retail-media-platform-citrusad-powered-by-epsilon.

18. Brad Moran, co-founder and CEO of CitrusAd, reportedly said: "By uniting the power of CitrusAd with the scale and identity capabilities of Epsilon, no one else can provide retailers with more monetization opportunities across on-site, off-site and in-store. And no one else can provide brands with a simple and trusted platform to capitalize on retailers' assets for media investment. Our DNA has always been to help retailers maximize their revenue potential from retail media and strengthen the relationship with their suppliers. With CitrusAd powered by Epsilon, we are delivering the promise of the retail media revolution." *Id.*

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,959,146

19. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

20. U.S. Patent No. 8,959,146, titled "media properties selection method and system based on expected profit from profile-based ad delivery," issued on February 17, 2015. A true and correct copy of the '146 patent is attached as Exhibit 1.

21. Epsilon, Conversant LLC, and CitrusAd make, use, offer for sale, and/or sell the Accused Instrumentalities (the Epsilon PeopleCloud platform, CitrusAd off-site, and related components including but not limited to components such as Epsilon's DSP, Epsilon Digital, Epsilon's Dynamic Creative Optimization, Epsilon Accelerate, and COREid) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '146 patent.

22. Conversant LLC and CitrusAd are affiliates of Epsilon that provide marketing technologies services with Epsilon, and Epsilon, Conversant LLC, and CitrusAd, through the Accused Instrumentalities, jointly and/or individually perform all claim limitations of one or more method claims of the '146 patent. A claim chart comparing independent method claim 1 of the '146 patent against Epsilon, Conversant LLC, and CitrusAd's infringing activity is attached as Exhibit 2, which is hereby incorporated by reference in its entirety.

23. Through at least the filing and service of this Complaint, Epsilon and Conversant have had knowledge of the '146 patent and that by providing the Accused Instrumentalities (e.g., Epsilon PeopleCloud platform and related components, including but not limited to components such as CORE Private Exchange, header bidding, and CORE ID) to direct infringers, Epsilon and Conversant knowingly and intentionally induce infringement of one or more method claims of the '146 patent in violation of 35 U.S.C. § 271(b). Epsilon and Conversant induce infringement of the '146 patent by facilitating the delivery of demand side platform's ("DSP's") ID, which is generated as a result of a cookie sync with a DSP, via one or more fields included in a bid request. *See* https://iabtechlab.com/id-generation-provenance-and-clarification/. The purpose of providing this ID value is so that DSPs can use profile information associated with that ID for purposes of targeting, as recited in claim 1 of the '146 patent. *See id.*; https://adalytics.io/blog/user-id-rotation ("In programmatic advertising, vendors utilize user IDs to build audience profiles and decide how to serve targeted ads. For example, a user with a given user ID might frequent a lot of gardening websites, and consequently, when ad tech vendors 'see' that specific user ID, the vendors serve ads to that user ID from advertisers who are promoting gardening tools"); https://help.smartadserver.com/articles/Knowledge/Extended-User-

Identification ("User identification across the inventory chain from Supply to Demand is critical to allow for targeting….").

24. As shown in Exhibit 2, the DSPs use of the DSP ID, Epsilon-, or Conversant-provided identifier (or identifiers derived from the identifiers provided by the Epsilon PeopleCloud platform) to use profile information to submit a bid response to target advertisements directly infringes the '146 patent, and thus provision of those DSP IDs, Epsilon-, and Conversant-provided identifiers in a bid request as well as monetizing the publisher's ad space by accepting the price condition in the bid response received from the DSP induces the infringement of the '146 patent. Epsilon and Conversant intend for this targeting to occur, because it results in more bid responses at higher prices. Despite this knowledge of the '146 patent, Epsilon and Conversant continue to make, use, offer for sale, and/or sell the Accused Instrumentalities, and to actively encourage and instruct customers and other companies to make, use, offer for sale, and/or sell the Accused Instrumentalities in ways that directly infringe the '146 patent. Epsilon and Conversant do so intending that their customers and end users will commit these infringing acts.

25. By making, using, offering for sale, and/or selling into the United States the Accused Instrumentalities, Epsilon, Conversant, and CitrusAd have injured Plaintiffs and are liable for infringement of the '146 Patent pursuant to 35 U.S.C. § 271.

26. As a result of Defendants' infringement of the '146 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

27. Plaintiffs are entitled to past damages for Epsilon, Conversant, and CitrusAd's direct and Epsilon's and Conversant's indirect infringement of the '146 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '146 patent.

28. Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '146 patent, and, specifically, enjoining further manufacture, use, sale, and/or offers for sale that come within the scope of the patent claims.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,677,398

29. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

30. U.S. Patent No. 8,677,398, titled "systems and methods for taking action with respect to one network-connected device based on activity on another device connected to the same network," issued on March 18, 2014. A true and correct copy of the '398 patent is attached as Exhibit 3.

31. Epsilon and Conversant make, use, offer for sale, and/or sell the Accused Instrumentalities (the Epsilon PeopleCloud platform and related components including but not limited to components such as COREid) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '398 patent.

32. Epsilon and Conversant, through the Accused Instrumentalities, perform all claim limitations of one or more method claims of the '398 patent. A claim chart comparing independent method claim 13 of the '398 patent to Epsilon's and Conversant's infringing activity is attached as Exhibit 4, which is hereby incorporated by reference in its entirety.

33. By making, using, offering for sale and/or selling into the United States the Accused Instrumentalities, Epsilon and Conversant have injured Plaintiffs and are liable for infringement of the '398 patent pursuant to 35 U.S.C. § 271.

34. As a result of Epsilon's and Conversant's infringement of the '398 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Epsilon's and Conversant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Epsilon and Conversant, together with interest and costs as fixed by the Court.

35. Plaintiffs are entitled to past damages for Epsilon's and Conversant's infringement of the '398 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '398 patent.

36. Epsilon's and Conversant's infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '398 patent, and, specifically, enjoining further manufacture, use, sale, and/or offers for sale that come within the scope of the patent claims.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 10,321,198

37. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

38. U.S. Patent No. 10,321,198, titled "systems and methods for dealing with online activity based on delivery of a television advertisement," issued on June 11, 2019. A true and correct copy of the '198 patent is attached as Exhibit 5.

39. Epsilon and Conversant make, use, offer for sale, and/or sell the Accused Instrumentalities (the Epsilon PeopleCloud platform and related components including but not

limited to components such as COREid and Epsilon CTV) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '198 patent.

40. Epsilon and Conversant, through the Accused Instrumentalities, perform all claim limitations of one or more method claims of the '198 patent. A claim chart comparing independent method claim 1 of the '198 patent to Epsilon's and Conversant's infringing activity is attached as Exhibit 6, which is hereby incorporated by reference in its entirety.

41. By making, using, offering for sale and/or selling into the United States the Accused Instrumentalities, Epsilon and Conversant have injured Plaintiffs and is liable for infringement of the '198 patent pursuant to 35 U.S.C. § 271.

42. As a result of Epsilon's and Conversant's infringement of the '198 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Epsilon's and Conversant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Epsilon and Conversant, together with interest and costs as fixed by the Court.

43. Plaintiffs are entitled to past damages for Epsilon's and Conversant's infringement of the '198 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '198 patent.

44. Epsilon's and Conversant's infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '198 patent, and, specifically, enjoining further manufacture, use, sale, and/or offers for sale that come within the scope of the patent claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a. A judgment in favor of Plaintiffs that Epsilon and Conversant have directly

    infringed each of the Asserted Patents, either literally and/or under the doctrine of equivalents;

  b. A judgment in favor of Plaintiffs that CitrusAd has directly infringed the '146 patent, either literally and/or under the doctrine of equivalents;

  c. A judgment in favor of Plaintiffs that Epsilon and Conversant have induced infringement of the '146 patent;

  d. A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patents;

  e. A judgment and order requiring Defendants to pay Plaintiffs their damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of the Asserted Patents;

  f. A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

  g. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendants; and

  h. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

| | |
|---|---|
| Dated: January 6, 2026 | Respectfully submitted, |
| Of Counsel: | FARNAN LLP |
| Reza Mirzaie | */s/ Michael J. Farnan* |
| Marc A. Fenster | Brian E. Farnan (Bar No. 4089) |
| Brian D. Ledahl | Michael J. Farnan (Bar No. 5165) |
| Adam S. Hoffman | 919 North Market Street, 12th Floor |
| James A. Milkey | Wilmington, DE 19801 |
| Philip X. Wang | (302) 777-0300 |
| Susan Y. Tull | bfarnan@farnanlaw.com |
| James Tsuei | mfarnan@farnanlaw.com |
| Jonathan Ma | |
| Joshua M. Scheufler | *Attorneys for Plaintiffs* |
| Daniel B. Kolko | |
| Mackenzie Paladino | |
| RUSS AUGUST & KABAT | |
| 12424 Wilshire Boulevard 12th Floor | |
| Los Angeles, California 90025 | |
| Tel: 310-826-7474 | |
| Fax: 310-826-6991 | |
| rmirzaie@raklaw.com | |
| mfenster@raklaw.com | |
| bledahl@raklaw.com | |
| ahoffman@raklaw.com | |
| jmilkey@raklaw.com | |
| stull@raklaw.com | |
| pwang@raklaw.com | |
| jtsuei@raklaw.com | |
| jma@raklaw.com | |
| jscheufler@raklaw.com | |
| dkolko@raklaw.com | |
| mpaladino@raklaw.com | |